24-600-47 United States v. Damien Xavier Giglio. We'll hear from Mr. Holder and then from Ms. Case. Thank you, your honors, and may it please the court, my name is Morgan Holder. I'm honored to be before you today representing Mr. Giglio, a CGA counsel, in this appeal. The Federal Felony Possession Statute 922G1 imposes a permanent categorical ban that prohibits millions of Americans from exercising their fundamental rights under the Second Amendment. In 2019, Mr. Giglio was convicted of possessing a firearm by an unlawful user of a controlled substance in violation of 922G3, and after his release, he served 41 months. He was indicted in 2023 under 922G1. Pursuant to Bruin, a motion to dismiss the indictment was filed in the district court asserting an as-applied challenge to 922G1. The district court denied the motion, and Mr. Giglio subsequently entered a guilty plea without the benefit of a plea agreement to preserve his issues for appeal. Subsequent to his plea, a rehemia has been decided and this court has issued its decisions in Diaz and Connolly and has invited the parties to submit supplemental briefs, which we recently did, and I'd like to primarily focus on those today. The whole area is in a lot of flux, correct? Correct. Imagine for a moment that we were the en banc court, so you weren't trying to say there's any binding character to Diaz. Can you point to any other circuit that has invalidated 922G1 currently? If you were before the en banc court and you were saying, you ought to follow the Ninth Circuit and Duarte, you ought to follow, is there any circuit yet that has said 922G1 is unconstitutional? Yeah, Duarte at one point in time had . . . And Branch, but is there any current post-rehemia circuit that has stated that 922G1 is unconstitutional? I'm not aware of any mandates or final decisions, Your Honor. I know that Duarte was just recently . . .  I believe . . . Tell me if I'm wrong. I'm sure you both have covered the landscape, but when I look at the circuits, you've got, and I'll mention it by name, you've got Chief Judge Pryor in the Dubois case out of the 11th. You've got on this Eighth Circuit, Steve Colleton and Jackson. Those courts are saying, listen, Heller endorsed felon bans. We don't see enough of a seat change. We're going to wait for the Supreme Court. That's one view courts are taking. Then Judge Thapar for the Sixth is saying presumptively they're valid, but the defendant can rebut the presumption. And then, and I'm just going to ask you if you think this is the landscape out there, the last category would be the Third and the Sixth saying, well, we don't need to answer whether they're unconstitutional if the defendant is presently serving a sentence. Because any felon who possesses a gun while they're actually serving a sentence, surely it's constitutional as to them. I would agree that's the current landscape, Your Honor. But you would lose under all three of those, right? Well, I believe, well, in the context of the, as it is applied to Mr. Giglio, I would say no. But . . . Why? Well, because this court states that you only consider the prior convictions that . . . Any other circuit in America would you lose? I'm sorry, I thought that was the question. Yeah, that's exactly my question. Well, the Ninth Circuit, I mean, I guess . . . They're hearing a week from today. They're hearing . . . So the other ones, all the ones that were just described, you lose in the Sixth, the Eighth, the Third, I'm sorry, the Eleventh. You lose in all of those. Is that correct? I'm just trying to be blunt about it. As currently set out, I would say yes. That's a very fair answer, because we're bound by Diaz. So I just wanted to reduce, is your argument essentially Diaz compels an outcome that now would conflict with them, so we would create a conflict, and the same court that was reversed, 8-1 in Rahimi, would be back in front of the Supreme Court against the array of circuits I've mentioned? The third argument is that Diaz controls, and I understand that it's in conflict with the other . . . But Diaz affirmed. It did, but the circumstances are a little different in that case. Well, Diaz is not about . . . was it about a supervised release claim? It was not, Your Honor. It was a . . . Okay, well, that seems to be a fundamental difference between Diaz in this case. But Diaz does state that the only consideration under a 922-G1 analysis are prior convictions that are carried over a year in prison. But it doesn't specifically address that you might have lesser constitutional rights on supervised release. It doesn't address that. It's not dealing with that in any way, is it? Not specifically, Your Honor, but I would . . . my position would be that the proper remedy for that situation, particularly in this circuit, given the Diaz opinion, would be a revocation of supervised release, which is exactly what happened here in this case. He wasn't just charged with the underlying offense. His supervised release was also revoked. So, what does that mean? Excuse me? How does that tell us what we should do here? Well, I think it instructs you that you only consider the prior felony conviction in analyzing whether 922-G1 is constitutional as applied to him. I think the supervised release component is quite frankly irrelevant to that analysis. Well, it wasn't irrelevant in two other circuits. I understand. In fact, it was front and center. Judge Bush in his concurrence said that's the only thing I'm looking at is that that person was on some sort of probation or supervised release. Isn't that right? Yeah, that's correct. Those circuits certainly hold that if you're on supervised release then some of your constitutional protections are minimized and they held that . . . Well, shouldn't we look at the historical analogs in context about an as-applies challenge and so we should consider the supervised release, at least in our historical analog analysis? Your answer may be the framers didn't have supervised release or probation department at all. One answer I guess historically is no one did any history work in district court in this case, right? Right. We don't have any amici. So we really don't know what the history is. But I guess one answer is did probation even exist back in 1791? Was anyone out on supervised release? I don't know if those two circuits have applied the pedigree analogical reasoning or is it in the world of sensitive places where as of yet no one's really done the history? Right. I mean there certainly was not any done in this case. I mean obviously this issue just kind of arose very recently. Didn't Judge Hardiman do the analysis? He specifically did the analysis, didn't he, in the Moore case? Talking about historical, the 1790 Pennsylvania law is analogous to disarming conflicts on supervised release. He has a, from the 1790 Pennsylvania laws. You found one? Yes. For example, the government cites the tradition of forfeiture laws which temporarily disarms conflicts while they completed their sentence. For example, a 1790 Pennsylvania statute provided every person convicted of burglary, robbery, sodomy, or buggery shall forfeit to the Commonwealth all goods and chattel the time the crime was committed. And so then there's a whole list of, and then it goes on and on for three or four pages. So I think that you may not agree with that analysis, but somebody's done some work on it. So do you have, do you think it's wrong? I guess my position on that would be it's not unconstitutional to state while you're on supervised release that you're not allowed to carry a firearm. That's a provision of your supervised release. But if you're— Your position pragmatically is revocation is not the same thing. Right. What about the answer, have you read Judge Hardiman's, the historical artifacts he's found? I've read all the cases, Your Honor. I mean, I just think that they're distinct issues altogether in the sense of, I'm not saying that, you know, if you're still on probation or supervised release, that cannot be a term or condition thereof. And you can obviously be subject to revocation if you violate those terms and conditions, which Mr. Giglio was here. I'm just saying if you're bringing— Let's say you're right, and Diaz pretty much is at least the methodological approach it suggests, is you've just got to confirm the constitutionality of the predicate. I think— If that's the approach, though, your client's predicate's a pretty violent one, correct? It's a 922 G3, just to— Right, but it was, he shot at someone while he was on meth with 11 guns. That's the allegation, Your Honor. That never came up until recently, and I went back and read the affidavit, and to me, there's an officer, a person that says one thing, and Mr. Giglio says another. Right, but do you handle the case below? I handle the 922 G1, not the prior—  Okay, so you remember the hearing. The district judge explicitly said he was cross-incorporating the PSR from that earlier one. Right. So he said, I'm finding by preponderance the facts of the prior conviction are quite violent, and unlawful use or possessing gun while using meth. So that would seem to say it fits in the Connolly world. There was a, in the PSR from the 922 G1 case that references that offense. But he was very careful in this case, as you must know because you were there, to say, and I'm cross-incorporating that PSR. No one objected. That's correct. So we know that the predicate was one that would likely count under Connolly and did involve credible threats of physical violence. You can push back, I'm just saying. Yeah, well, I believe that the criminal complaint, which they're referencing in that, states that Mr. Giglio was at his home. There was no drugs found. He's an avid hunter. I think that's, everybody knows that. He has been his entire life. Yeah, but that's the current offense. We're talking about the predicate, right? He was hunting and the trespassing problem. I know that to the current. But the predicate was pretty bad? Right. In the things that were recovered from his home, subject to that search warrant, were firearms and ammunition. I thought he shot at someone. That's an allegation. He denied that in that same complaint. Yeah, but the PSR made a finding of it, and the district court cross-incorporated it, and no one objected. I think it had both versions in the PSR. Okay, you're probably right. My position is, reading it in its entirety, if anything, it almost looked like a case of self-defense, somebody protecting his home. He claimed that he just shot a warning shot up in the air. How does Diaz work if the key inquiry is the predicate? Because there, I guess what the panel said, and we're bound by it, is they did the history work, and theft was punishable by death. That's correct. So you can dispossess someone of a gun. That's correct. But how does that not run up against the case that the government cites, Lewis, that in a particular criminal case, you can't attack the underlying predicate? You would have had to have filed a quorum nobis to get it vacated, and then come in and say, I don't have a predicate. How does your position and the Diaz position reconcile with, do you know, the Supreme Court Lewis decision? Yeah, I would say, I mean, in that decision, they said it's basically your status as a felon that is dispositive of the issue you're involved in. I mean, since Bruin and Rahimi and his progeny, I mean, I believe that's kind of rendered that obsolete. Otherwise, there could never be . . . So Bruin and Rahimi, your position is Bruin and Rahimi have rendered the Supreme Court's Lewis decision obsolete. So anyone charged with a 922G, in a motion to dismiss, can attack the underlying condition? That's how you read Diaz? I'm saying that I think you were allowed to analyze the underlying conviction under the framework set out in Diaz. But, I mean, there's . . . Because otherwise, if you're not allowed to, there would be no . . . I was thinking the district court here said what you should probably do, if you think it's an infirm predicate, you should file to undermine it, just as people do when they have predicates that qualify them for removal of the country. You can't do it in connection with the immigration proceeding. You've got to do it separately. But you're saying maybe that's obsolete. That would be my position. Yeah. Interesting. How about another tough one to harmonize? And this area of law is befuddling to me, but Salerno. If you look to Salerno, that's the courts saying, oh, it's constitutional to detain someone or, after they've been charged, even to release them, but tell them they can't keep a gun. How could it be possibly constitutional to dispossess someone of a gun just because they've been charged, which I think is affirmed in Salerno, and yet here, he's been charged, convicted, and he's under a sentence, and we'd be saying it's unconstitutional. I believe that you get into the how. I believe those are temporary disarmaments. You know, Salerno-Brahimi, you know, you get into judicial determinations, whether somebody's violent, that type of thing, that authorizes a temporary disarmament. So Salerno's okay, you can temporarily disarm somebody, but the key is now the lifetime ban. It's permanent lifetime categorical ban, no exceptions applied, and I think that there's got to be some historical analog there to justify that. There's not a way to go back. You know, we often say if you're permanently banned or some kind of restriction that's unfair that you can go back and ask for it to be removed, the lifetime part of it. We've talked about that in the context of computers. We've talked about that. In fact, we've construed those to mean it's not really a lifetime ban. You can go back and ask for permission for particular uses, you know. So does he have any responsibility to ask for, if it is deemed considered to be lifetime, to go and ask for it to be removed before it's seen as truly a lifetime ban? I appreciate your question. My understanding is that there is no... Well, there is in the code, but Congress has never funded it. Okay. You can request ATF to give you back your gun rights, but it's never been funded. I knew under certain state laws. Yeah, federal. But I mean, for all intents and purposes, it's been a permanent categorical demand since it's been enacted in 1938. Okay. Your time has expired, but you saved time for rebuttal. I did. Thank you. Thank you, Mr. Holder. Ms. Case? Good afternoon. May it please the Court? My name is Jennifer Case, and I am here on behalf of the government. Mr. Giglio's conviction can be affirmed for at least one of three reasons based on principles that emerge from our regulatory tradition. First, this panel can follow the lead of this Court from the very recent cases of Isaac and Bullock, which show a principle that legislatures can disarm those whose criminal history establishes a special danger of misusing firearms. Second, this panel can follow . . . Are those all in your 28J? No, Your Honor. I believe they post-dated. One of them was . . . Is this to us and to your friend on the other side? I don't believe so, Your Honor. I believe they're quite . . . Well, you're going to talk about cases you haven't yet cited? And did you tell him today, I've got these new cases and I'm going to be relying on them, and go over to his table and hand him a copy at least? I have not, Your Honor. Okay. What was the position in your brief to us? Mr. Holder, you have a right to file a 28J within seven days to address the new cases, and you . . . Well, actually, first of all, you need to file a 28J with your new cases, and I'm not talking about a brief or anything. I just mean attaching your cases, and he can actually respond since he's not going to be able to do an argument on it, but you can just attach them and we'll let you say your points on them. But that's not good form, especially for the government, because you didn't file anything to let us know, and you certainly didn't tell him. So thank you for your candor, though. You may proceed. Thank you, Your Honor. The government is defending this in the Supreme Court every single circuit, so presumably you're following the position that the government is asserting about 922G1. I assume you've consulted. So what is the government's principal response across the nation? What is . . . Are you coming up with your own office's theory, or have you consulted, and therefore you know the government's position that it has to take at least within a week in the Supreme Court? Your Honor, we have consulted with multiple people. Okay. So your primary position is the one you asserted in the brief? Instead of three reasons we can affirm, what is the reason that the government says a 922G1 conviction is not infirm after Rahimi? What is the primary argument? Well, the government's primary position is that G1 is constitutional in all applications and it is not subject to as-applied challenges. We understand that in . . . That's foreclosed by virtue of DA. In this court. That's right, Your Honor. Okay. So in this court, what's the position you're taking? The three positions. One is based on the . . . Well, just give me your best one that you did brief. Our second argument for affirmance is the principle recognized by this court in Diaz that legislatures may permanently disarm those who commit serious crimes, including crimes that's carried serious and permanent punishment at the time of the founding. This court could also . . . Wait, okay, but slow down on that. Is the serious crime the 922G1 or is it the serious crime, the 922G1, based on his G3? It is the criminal conduct of the defendant predating the G1, so it's the G3. And it could also be as the Williams court in the Sixth Circuit said, the government's position is that we can look beyond just the predicate, but we understand the nature of the Diaz opinion that we're looking at the predicate conviction here, the G3, which for Mr. Giglio includes the conduct that this panel discussed. Because in Diaz, it was theft, right? And the court did the hard work historically and said, we know in 1791 much worse things than losing a gun would happen to someone who stole a cow. Okay, but here the predicate is unlawful user, right? Possessing a gun while being an unlawful user. So where's the hard work historically that the government is supposed to have done? There was no historical analogy given to the district court, none to us, right? So then we naturally go to Connolly, but Connolly says there's a problem. The Mr. Giglio's facts, underlying facts for his predicate conviction are different than Ms. Connolly's facts. And we know that that's been ascertained. What are you relying on? Is it because the PSR was there, but at the same time, the PSR in this case, paragraph 16 says there were no victims in his hunting. He went hunting. He thinks he wasn't trespassing. Right, for the G3 offense. That makes him seem like he was a bad guy years ago. When you read the sentencing, it may well be that he's remediated, right? The sentencing's sort of compelling for him. So under Rahimi and Diaz, aren't we saying, is he a credible threat, physical violence to others? And we look at the trespass offense, the current offense, don't we? For the as-applied challenge, the government's, the principle, the tradition that the government is relying on is the ability to disarm those who have misused guns. Ever in their history. Like as a kid, they misused a gun. Why wouldn't it be the offensive conviction? He's hunting. There are no victims. The offensive conviction is not the one that disarmed him. He could not have a gun, which is why he's convicted here. He could not have a gun because of his prior conviction, which is based on conduct involving misuse of a gun. But I guess that does get into the problem of why would you get a lifetime ban if 30 years ago you did something violent, right? Does it make any sense to be looking back and relitigating the predicate? As applied to Mr. Giglio, he had not even completed his criminal sentence for this misuse of a gun. It was not 30 years. The penalty did not attach 30 years ago. It was a few years before. He was still completing his criminal sentence, which is the third tradition that this court could rely on for disarming. That's the third in the Sixth Circuit's approach. Yes, Your Honor. Any time a felon is still serving their sentence and they possess a gun, that's constitutionally valid? Yes, Your Honor. Okay. Are you aware of anything in Diaz that would prevent us from following that approach? I am not, Your Honor. I do not believe that the continuance on supervised release or the being on probation, that those court supervision, completing your criminal sentence aspects, were a part of the Diaz panel's consideration. And so this would be a fresh look if this panel were to take it on. As this panel is aware, the court also has Contreras, where the government presented a similar argument about the defendant who was not on supervised release. I believe that was probation, but it's an argument based on the same historical tradition. What's happening in that case? Oral argument occurred about a month ago, I believe, and I believe we're just waiting on the court's opinion. And it's a supervised release? I believe it's probation, Your Honor. Probation. So it's a preserved 922G1, first in time, and it has some analogy to supervised release probation? That's right, Your Honor, with a G3 predicate offense. This one is in a hurry because it's about to run out the sentence, right? It's about to be released or something. I'm not familiar with those facts. This is not that situation? Mr. Giglio? Mr. Giglio, we're in a hurry here. Didn't we? Yes, Your Honor. Yes. Oh, I was unaware of that. Release date. Release date, yes. So am I wrong that he has a release date that's imminent and that it's by the end of the year or something like that or January? I'm unaware of a situation like that. We'll ask your friend on the other side. As to the permanency of the G1 prohibition, it's better characterized as indefinite or indeterminate, which is comparable to the forfeiture laws at the time of the founding where one lost their property as a result of misuse of a gun or whatever other crime they may have committed, and that was also an indefinite disarmament. Why is this called indeterminate or indefinite whenever the government usually takes a really strong thing that lifetime means lifetime? There are some ways for one to regain the civil right, including receiving a pardon, having a conviction set aside. They are admittedly narrow, but there are some ways, which is why that slight distinction. And the forfeiture laws, it sounds like giving up your gun. If you think about it in today's world, you could just go back to Academy Sports or wherever else and buy a firearm for a very cheap price. That was not the case at the time of the founding. They were not as accessible or affordable, so disarmament was indefinite, even if in theory one could go back and get a gun. The analogy of the disarmament here with the forfeiture laws at the time of the founding are what this court in Diaz found as historically relevant and supports affirmance in this case as well. Can we play this out? If we were, and I'm not foreshadowing, I'm just trying to look at all the options. If we were to consider this as a supervised release only case, probation, supervised release, that sort of case, and look at that, then that would only apply during this time while he's still serving the Senate. You would win if we were to look at it like that and like these other courts have. But then would he still have a claim for the rest of his time on the fact that because he has a lifetime ban, could he still challenge that? Would that still be... Or is that already collaterally estopped in some way? I'm sorry, I'm not... I believe the question is if he were to possess a gun following the end of his supervision. Or request to possess a gun. I don't know that he would have to actually commit another crime and have to put himself in jeopardy, but request to say, I don't think you should be able to keep me from getting it because I'm... As the range...  Right. And then it would tee up the Diaz problem. Or the Supreme Court would have worked it out in the meantime. Right. Off the cuff, Your Honor, I believe the analysis that you presented is correct, which is that if this court travels under the supervised release tradition of disarmament, there's a temporal end to that ability to disarm in this as-applied process. We could still constitutionally challenge any future prohibition. Right. We would... You couldn't argue... Wrong three would not be on the table. That's right, Your Honor. What was his term of supervised release here? Because he's going to get another one. If we affirm this... Right. I'll be back on... Do you know, was it three years? I don't know how many years, Your Honor. Because he'd be back on supervised release. Correct, Your Honor. But this court could travel under the other two prongs and I will not visit the recent cases, but even under the seriousness... Probably the cases you cited, of course I'm intrigued now, there are Fifth Circuit cases that avoid Diaz somehow. Those are Fifth Circuit rulings upholding 922G1 convictions aware of Diaz. Not avoiding Diaz, Your Honor. Embracing Diaz. So they uphold preserved attacks applying Diaz. They look at the predicates and they say, oh, well, back in 1791 these would have allowed dispossession. Yes? That's right, Your Honor. You can discuss the cases because he's going to have an opportunity to do a 28 check. What were the predicates? I'm surprised I didn't find this. Aggravated assault in both. That's true. That's the Edith Jones opinion. They're very short. They're about two pages each. One was aggravated assault. That's right. And one was aggravated assault plus manslaughter. They don't have the convoy problem. Correct. They're not G3 cases. That's right, Your Honor. But they speak to the misuse of a firearm and how misusing a firearm, that conduct, which Mr. Giglio engaged in here, the conduct of misusing a firearm, fits neatly is what the court says within the historical tradition of disarmament and embracing not just Diaz, because Diaz says that the facial challenge is foreclosed, but that applying the principles from Rahimi of looking at the going armed laws and the security laws. It also makes sense under G8, which is what Rahimi wants, because the statute under G8 says the credible threat determination has been made by a court and it'll only be for a certain amount of time. I don't understand why that whole Rahimi approach is going to work for the status offenses like dishonorable discharge, fugitive, felon, right? Because those portions of 922G say nothing statutorily about being a present, current physical threat, correct? Right. So why are we applying Rahimi at all here? Rahimi has to do with statutory language and it's temporary. We're using the principles, the analytical framework from Rahimi regarding how we look at our historical disarmament at the time of the founding. But in Rahimi, right, what the court's saying is we've had a court that says he is a present threat to the person he committed domestic violence against. So he's got the gun and he's presently been determined to be a threat. But what you're saying is you can dispossess forever, even if the allegedly threatening behavior was years ago adjudicated, even if the guy's been a model citizen since then. He's just forever branded as a present, current physical threat. That's a very different analysis. You don't have to agree with me. But when I read the sentencing of Giglio, he doesn't sound as much... He once was a bad threat, but then the trespass moment doesn't really sound like he's a threat to anyone he's hunting. If we look at the historical disarmament, legislatures looked to categories, broad categories to disarm. Forever. Forever and ever. But as far as we know, it was... The armed laws were very specific. They weren't forever. But the categories of disarmament, and as disturbing as they are today, there were categories of disarmament. Yes, there are offensive ones, but those show what the legislature... We can't always really debate whether we should ever look at those. Those were disarming groups of people that were Native Americans, Catholics, slaves. We agree today that it's wrong, and it would be unconstitutional under other provisions. But under the Second Amendment, we have been told by the Bruin Court, by the Supreme Court, look at our history. These are lawbreakers. The Supreme Court and our court in Diaz have not accepted that argument from the government, I don't think. Lawbreakers are entitled to Second Amendment protection. Correct? Right, so the Diaz panel says that felons are a part of the people. Yeah. That's correct, Your Honor. But the Diaz panel did not say that we can't look at the broad categories from the time of our founding to show... You were going to answer something that he... Why is it okay to use these broad categories, these unconstitutional broad categories as an analogy to allow you to ban other categories of people? Is that what you're saying? To look at the principles behind why categories were disarmed, the loyalists, why people of unsound mind were disarmed, the intoxicated, people of certain ages were disarmed, and the offensive ones. I mean, admittedly so. But it shows that legislatures were... believed they had the power under the Second Amendment, consistent with the Second Amendment, to disarm, to protect society, which is what Congress is doing through G3 and G1. Are you saying you could ban an intoxicated person from chronically intoxicated or something? I mean, that's relevant to this. Because doesn't that become a status? As long as the reason, the why, and the how of the punishment are comparable in burden to how it was at the bounding, yes, Your Honor. You don't think there's an independent constitutional problem with that? You know, they recently took up in the Eighth Amendment context. There was a big argument last term on that. I do agree that these categories that existed at the time of the founding would not be constitutional today. But the Constitution has changed since the time of the founding. Well, would it be constitutional if it was because he had been a meth addict in the past to ban him forever? The hardest part of this analysis, to my mind, is that legislatures took such broad view of what they could disarm at the time of the founding. And we've been advised by Justice Barrett that we shouldn't assume that they even took the fullest extent of what they could do. That they disarmed groups that were not    that they found were untrustworthy and or dangerous. And so if the legislature believes that someone who was addicted to meth 20 years ago is untrustworthy and dangerous, that's consistent with the historical principle. Does that mean the federal government takes the position in this case that you can disarm someone who used to be a meth addict for the rest of their life? Is that the position and that that's constitutional? That is not the position we're taking in this case, Your Honor, no. It's that Mr. Giglio misused a firearm while using methamphetamine and that he can be disarmed for that consistent with things like the going armed laws and the surety laws. Yes? What's the government doing today as an officer of the court with 922G1 prosecutions? Is the solution that you're asking juries to make a fourth finding, not just felon, previously convicted, possess a gun, but also the jury would find beyond reasonable doubt and if, and there would be a danger to the public if he stayed armed. In other words, the government's not gonna do the history in every single case. Are you asking juries in 922G1 to add and make a finding of that? Your Honor, I have not read any guidance saying that.  So to protect until you get clarity, do you agree that that instruction would probably insulate any 922G if you got a further judicial element asked? That if the person would be a danger to the public, borrowing the Rahimi language, if they were to be armed? You may not have an opinion. I don't have a good answer for that,  but my instinct is no. What would be helpful is dust has been put on the home plate and we just need the umpire to just rub some of the dust off so we can see the boundaries again. That would be helpful. And we ask that in this case you affirm the conviction and sentence. Thank you, Your Honor. What's the dust? I'm trying to understand. I love baseball, but I don't get your analogy here. I apologize. The circuits are going every single way. The government has no idea. The one thing you don't want, I'm going to guess, is you can't have some people charged with the identical crime in one part of the country that don't go to jail, and other people do. And right now you've got three buckets of circuits that have all come up with different rules. At least. And the Fifth Circuit was very clear. Is that the dust? Is that the real, that's percolating? Not that it's percolating, Your Honor, but in the Fifth Circuit, not just that it's percolating, that is certainly part of it. In the Fifth Circuit, for multiple decades, we had a historically based analysis that said G1 was constitutional in all respects. And now we're pushing towards not just a felony by felony analysis, but a felon by felon analysis. And the boundaries are not, it's just not even clear what types of evidence the government needs to bring, when we need to bring it, because right now it appears that the government has the burden on every as-applied challenge, which is not the usual burden. Usually the... You didn't file for en banc in Diaz. You probably can't speak to that. We are doing our best. You responded in opposition to the en banc. The government did not seek en banc in Diaz. It's not your fault. It wasn't out of your district, probably, or the SG may not have approved it. Who knows? Not for us to ask. I agree with you. It's chaos, and you're charging these every day, and no one knows what has to prove and what burden, but most of that's because of Diaz. Or maybe it could be because of Rahimi and its progeny that even in Rahimi, if you could show that you didn't have due process for the hearing for the initial hearing about the domestic violence, if you didn't have process and that was actually argued, that case might have come out differently. I mean, do you see what I'm saying? Yes, Your Honor. There was already that seed in that case, so it's not just the circuit, the idea that you should have to prove and that you should have that evidence if the position is preserved.  Okay, thank you. Thank you all. Mr. Holder, you've got a lot there, and we'll give you a couple extra minutes. I was having a little bit of trouble hearing, so if I... Oh, no. Next time, speak up and tell us, because we'll try to be louder. I just want to touch on the misuse of firearm language, because I think it's relevant and important in the context of the Connolly opinion. Our position is that Mr. Giglio, despite the fact that he allegedly fired a weapon, did not misuse a firearm in the underlying G3 conviction. Even in the one with the meth? Correct. Now, there was no drugs found. He said he might test positive for meth use, which could indicate he used it two weeks ago. He didn't say he was intoxicated at the time that he arrested. Excuse me, Your Honor. Somebody shot at somebody. Well, they said that the people, the alleged victims... I'm saying they said, but I'll go back to the record. The district court said, I'm incorporating the PSR. In that, he also said, I didn't shoot at anybody. He said he just fired a shot up in the air. What's the rule of law here? You say in every 922G prosecution where the government brings it, in the Fifth Circuit, only in the Fifth Circuit, what does a district court have to do? They have to analyze the underlying predicate conviction, the underlying predicate felony conviction, or multiple convictions. And that's because Lewis is obsolete. So, when you're defending against a 922G1, the actual defense is going to be you're re-litigating the validity of the underlying predicate? That's what the rule is in our court? Well, I think, I think Diaz, I mean, let's just take Diaz for example, obviously, he had other convictions for theft and that type of thing that had historical analogs back to the founding of the Second Amendment that allowed for execution, state forfeiture, you know, permanent type punishment, which is similar to 922G1. There's got to be some historical analog in the sense of, the most common analogy would be the intoxication by drunkards or alcoholics, but, and there is a, a founding analog, but it is very temporary and it's very minor. The punishment was small fines, the punishments were less than six months in jail, and the... So, the bottom line principle is you can't take guns forever. You can for temporary periods of danger, but not forever. I'm not, I'm not advocating that certain violent offenses, you know, wouldn't potentially justify... But across the boards, you can't, the government can't dispossess them of guns forever, across the board felons. That's your position, right? It has to be. It is in the... Not all... As applied to Mr. Biglio's facts, certainly. But you know our law, our court has said constitutionally we can dispossess all felons of their right to vote for the rest of their life. Our court just said that. But you can't do that for guns. So, the right to vote is less sacrosanct than having a gun? It's not a second class right, the second amendment. I mean, it's very important. I know, but here it's a primary right over the right to vote, according to our court. I'm just, I mean, judging by what the court has stated, and Diaz and Connolly, on the supervised release issue, I don't think I was very clear about what I was trying to state earlier, but obviously the more, I mean, the more in Gowen's opinion or in conflict with Diaz... Why is that so obvious? Well, because they allow analyzing conduct that has nothing to do with the predicate felony offense. They allow you to get into other stuff. That's the... Look at the entire record. Other stuff is... very pertinent. It's uniquely pertinent. But in Diaz, it instructs us that you can only consider the, well, not just, if you have more than one, you can obviously consider all of them, but... Well, they weren't talking about this. They were talking about other factors out in the world, weren't they? In Diaz? Right. They would say that when you're analyzing as applied challenge to G1, that you only analyze, the only felony, the only convictions that matter in that analysis to see if there was some type of historical... But that's the conviction that matters in the analysis, which is different than what is your status while you're committing. I don't know. We can talk about it. We don't need to talk about it anymore, I don't think. Where do you read that in Diaz, that the only analysis is the predicate? Because I sort of thought it's a difficultly constructed opinion, but after the discussion of predicates, then there's a separate heading to firearms, and then it does seem to not say that's the only way that you assess. Do you remember that final section? I do, and it seemed to say there that without a tradition of some type of severe punishment, then 922 G1 cannot be upheld as applied challenge there. And so they get into... When they're talking about, for instance, theft, theft does not inherently involve a crime of violence, but in Diaz, when they analyze the underlying conviction there, there's obviously the horse theft penalties that I believe were capital punishment that were similar to the vehicle theft in that case. And so you have to have... If you don't necessarily have an inherent threat of violence, then the punishment has to be some type of severe punishment. What is the situation with your client's conviction and sentence and supervised release and all of that for the timing of this? He... Let's see, this started in 27 months, in 24 months. I think he's set for release sometime in early 2025, I believe, Your Honor. Right, he's about to be released. Early to mid 2025, yes, Your Honor. But you don't... Okay, and he's about to be released and does he have supervised release on top of that? He will, Your Honor. Do we know it's three years? I believe it is three years. Okay. Have you filed any type of post-conviction to attack directly the underlying predicate? I have not, Your Honor. Did you have anything else? We asked you quite a few questions and I don't know if you have a chance to make any points you wanted to make on rebuttal. Just one more thing on the supervised release angle. The statute, 22G1, which is the statute of conviction there, it... It deals with specifically possession of firearm by a convicted felon. It doesn't mention anything about supervised release. The new charge here was not based upon the fact that he was on supervised release. It was based on his status as a felon and the Supreme Court precedent states that in these out-of-supply challenges that the application of the statute considers conduct that the challenge statute actually prohibits. Was Goins and Moore different in that respect? Was anything based upon the supervised release in those cases or probation? I believe they just based it upon the fact that he was on supervised release. So that's a difference in those cases? My position is it was incorrectly decided but . . . No, no, no, but I'm asking was there a factual difference in what the charge was? In Moore versus . . . In Moore or Goins? I need to . . . I don't believe there were 922 G3s. That was not the underlying predicate. Nevertheless, the terms of supervised release were, I would say, fairly identical. I mean, obviously, that provision was. I don't know about all the other ones, but they were certainly all prohibited from carrying a firearm just like every defendant that I . . . But is that what they attacked it, was carry the firearm while on supervised release or did they attack it because it was not prohibited as a felon? Excuse me, I'm sorry. I don't . . . Did they complain about it because they were on supervised release and not supposed to possess a weapon or did they complain about it because they were a felon and they were possessing a weapon? Which is the . . . What was brought in those cases? I'm trying to figure out if they're factually analogous. I believe it was a 922 G1 case and they did justify their holding by the analysis of the defendant being on supervised release. Again, I assert that that's an incorrect application of the law. It certainly conflicts with Diaz. I believe the proper remedy for that is a revocation of supervised release and that a separate 922 G1 prosecution should only deal with the underlying predicate felony. Last question I have. Just as no court has yet, as far as I know, ruled 922 G1 is unconstitutional under the Second Amendment, Diaz gets as close to it as possible if we have to go down this route with predicates. It's also true that no court seems to be confident right now to say that all 922 G1s are constitutional. The only courts that are saying that are ones that are saying, well, Heller's dicta reoccurred in Bruin, reoccurred in Rahimi, we're going to leave it up to the Supreme Court. Is that fair to say? I think that's fair. That's sort of what the government's saying about the dust. Some courts got to step up to the plate and say yes or no on 922 G1. I think that's fair to say. Obviously Rahimi and Bruin, there was no 922 G1 necessarily historical analysis done on that. I think that's fair to say. Thank you, Mr. Holder. We have your argument. We note that your court appointed and we appreciate your service to the court today and we appreciate also your argument in this case and the case is submitted. The court will stand in recess.